# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **IN RE DEPAKOTE: RHEALYN** | ) | **Case No.  12-52-NJR-SCW** |
| **ALEXANDER, et. al.,** | ) | **LEAD CONSOLIDATED CASE** |
| | ) | |
| | ) | |
| **PLAINTIFFS,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ABBOTT LABORATORIES, INC.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | **ON ALL COUNTS** |
| **DEFENDANT.** | ) | |

**DISCOVERY ISSUES FOR CONSIDERATION
AT THE AUGUST 26, 2014 DISCOVERY CONFERENCE**

The Parties respectfully submit the following issues for consideration at the August 26, 2014 Discovery Conference.  These issues were discussed by the Parties during a telephone conference on August 21, 2014.

### 145.  Timing Of Depositions Of Minor Plaintiffs' Treating Health Care Providers

Plaintiffs' expert designations in the bellwether cases are due on October 1, 2014.[1]  Certain of Plaintiffs' experts may rely on information from Minor Plaintiffs' treating physicians as bases for their reports.  In an effort to begin scheduling the depositions that may be necessary for these cases, Plaintiffs sent Abbott an email on August 8, 2014, offering dates for among others, a physical therapist who works with Minor Plaintiff D.W.K.[2]  On August 11, 2014, Abbott stated that it needed some later date for the physical therapist.[3]

Also on August 11, Abbott sent Plaintiffs a letter regarding deposition scheduling generally.  Abbott's position is that it needs "the deposition of the mother and a satisfactory set of records before" it will be prepared to depose the physical therapist (and, presumably, Minor Plaintiffs' other treating health care providers).[4]  Abbott has offered no explanation why it needs the Minor Plaintiffs' mother's depositions before deposing Minor Plaintiffs' treating health care providers, and Abbott has never specified which records it requires before taking these depositions.

Plaintiffs responded on August 15, 2014, explaining Plaintiffs' potential need for the depositions of selected Minor Plaintiffs' treating health care providers sufficiently in advance of the deadline for Plaintiffs to designate experts.[5]  Plaintiffs offered a solution to Abbott's request for records

---

[1] *See* Scheduling Order (Dkt. No. 15 in Case No. 14-cv-847-NJR).
[2] *See* August 8-14, 2014 email string, attached as Exhibit A, at 2-3.
[3] *Id.* at 2.
[4] *See* August 11, 2014 letter from D Ball to H Novosad, attached as Exhibit B, at 1.
[5] *See* August 15, 2014 letter from H Novosad to D Ball, attached as Exhibit C, at 1-2.

necessarily Native File format, preserves all material data fields, and the searchability and usability of the data in those fields . . ."  Plaintiffs request production of the call notes according to this paragraph so that *all* material data fields associated with call notes, such as the date of creation or date of revision of any entry, or any other fields containing metadata, are preserved, searchable, and usable by Plaintiffs.

**Abbott's Response:**

The call notes information produced as part of the Defendant Fact Sheet responses is a hybrid of interrogatory-type responses and documents produced from Abbott databases.  (*See* excerpted spreadsheets submitted as pp. 2-3 of Plaintiffs' Ex. F.)  As a threshold matter, Abbott's position is that such "productions" are not, strictly speaking, subject to the ESI protocol, because the call notes spreadsheets (which have been produced to the plaintiffs in PDF and Excel format) were created solely for the purposes of this litigation.  Those spreadsheets are not themselves "[d]atabases and other structured data files . . . ." (*See* Plaintiffs' Ex. G, ESI Protocol, ¶ 7, at 12.)

The only potentially relevant "metadata" that plaintiffs have raised is the possibility that the databases from which call note information was drawn might reflect the entry date or a revision date of the information.  The spreadsheets reflect for each entry the "Call Date," and there is no reason to believe that the associated information was not entered on or shortly after those dates.

The call notes spreadsheets for prior bellwether cases were served in the same PDF format to which plaintiffs now take exception, and plaintiffs did not previously object.  Re-production of the call notes data in "native format" would require a diversionary inquiry into the technical attributes of the databases, formatted "extraction" of the data (and any associated metadata), and reformulation of the same data into yet another spreadsheet.  There is no reason to believe that such an undertaking would reveal any material incremental information.  The schedule fixed by the Court for discovery in these bellwether cases does not afford the luxury of a side-trip into tertiary electronic discovery issues under the circumstances presented.

## 147.  Amendment Of Bellwether Complaints

Before Judge Rosenstengel assigned the four bellwether selections to a single case number, the bellwether plaintiffs were part of different cases, governed by three separate pleadings.  Kaleta is a named party in Cause No. 12-cv-0057, and the First Amended Complaint pleads Strict Products Liability, Negligence, Gross Negligence, Breach of Implied Warranty, Breach of Express Warranty, Misrepresentations by Omission, Fraud and Misrepresentation, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress.[18]  Conversely, Pyszkowski and Leal are part of Cause Nos. 12-cv-0056 and 13-cv-134, respectively, and currently operate under their Original Complaints (from state court) which plead Strict Products Liability and Negligence.[19]  Plaintiffs have intended for each of the four Illinois bellwether cases to plead the same claims, though unlike the Kaleta case, the Pyszkowski and Leal complaints

---

[18] *See* Cause No. 3:12-cv-00057-NJR-PMF, Dkt. No. 2-16 (January 19, 2012).
[19] *See* Cause Nos. 3:12-cv-00056-NJR-SCW, Dkt. No. 2-15 (January 19, 2012); 3:13-cv-00134-NJR-SCW, Dkt. No. 1-10 (January 18, 2012) at 5.

have not yet been amended.  Plaintiffs intend to amend the complaints to consistently plead the same causes of action and to insure that all complaints include claims based on strict liability, negligence, breaches of warranty, wanton and willful conduct and a prayer for all available damages, including punitive damages.

Before formally presenting their request to amend to the Court,[20] Plaintiffs seek guidance on how the Court would like to handle these newly combined cases.  In seeking leave to amend, Plaintiffs request guidance on whether they should file amended proposed complaints separately in the original case numbers, separate amended complaints in the new case number, or one amended complaint in the new case number.

**Abbott's Response:**

Abbott understands that the new, four-case matter was established by the Court as a docket control mechanism, and as a matter of efficiency in dealing with bellwether-related filings.  Abbott, of course, has no problem proceeding to file matters relating to the present bellwethers under that four-case consolidation, Case No. 14-cv-847-NJR-SCW.  The bellwether plaintiffs, however, could not properly join in an amended complaint meeting the requirements of Federal Rule of Civil Procedure 20(a)(1), and thus any such amended complaints should be filed separately, and not as "one amended complaint in the new case number."  If necessary for the Court's docket management purposes, Abbott has no objection to separate complaints for each bellwether plaintiff set filed under case number 14-cv-847, but Abbott recognizes that the CM/ECF system, logistically speaking, may not accommodate such an approach, in which event it may be necessary to initiate new, separate case numbers for each bellwether plaintiff set, with filings common to the bellwethers to continue to be filed under case number 14-cv-847.

Abbott has no desire to complicate unnecessarily the logistics of the situation, but respectfully suggests that the logistical expediencies cannot be permitted to trump Rule 20 and the requirement of separate complaints.

### 148.  Request to Advance the Deadline for the Service of Plaintiffs' Objections to Abbott's Written Discovery Requests in the Bellwether Cases

Abbott served the first of its interrogatories and document requests in the bellwether cases on August 13, 2014.  That written discovery was accompanied by a request from Abbott that Plaintiffs serve their objections (but not their substantive responses) to the written discovery within 15 days, rather than taking the full time afforded by the rules of civil procedure applicable by default.  Abbott's request to advance the deadline for the service of Plaintiffs' objections is motivated by a desire to identify and address on an expedited basis any objections that Plaintiffs might raise, consistent with the very challenging schedule mandated by the Court.  Plaintiffs have declined Abbott's request for expedited treatment.  The only rationale offered by the Plaintiffs for refusing to expedite their objections is their desire to take the full time allotted by the rules.  Abbott believes that a request for expedited identification of Plaintiffs' objections – according to a schedule that would allow any such objections to be addressed and resolved, by

---

[20] *See* Fed. R. Civ. P. 15(a)(2).

there is no requirement that all evidence in this case come from medical records.  Thus, Abbott's proposed certification is not only unnecessary, it imposes a burden to rely strictly on records that is not required under any rules.

Respectfully submitted,

_____/s/ Christopher Cueto_____
Christopher Cueto, #06192248
Michael Gras, #06303414
LAW OFFICE OF CHRISTOPHER CUETO, LTD.
7110 West Main Street
Belleville, IL 62223
Phone: (618) 277-1554
Fax: (618) 277-0962

Ralph D. McBride
Tony L. Visage
Phillip L. Sampson, Jr.
Heath A. Novosad
Blair R. Loocke
Nancy R. McEvily
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002
Phone: (713) 223-2300
Fax: (713) 221-1212

Jennifer Salim Richards
BRACEWELL & GIULIANI LLP
1445 Ross Avenue, Suite 3800
Dallas, Texas 75202
Phone: (214) 468-3800
Fax: (214) 468-3888

John E. Williams, Jr.
John T. Boundas
Steven J. Kherkher
Sejal K. Brahmbhatt
WILLIAMS KHERKHER HART BOUNDAS, LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017-5051
Phone: (713) 230-2200
Fax: (713) 643-6226

William M. Audet
Joshua C. Ezrin
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, California 94105
Phone: (415) 568-2555
Fax: (415) 568-2556

Jeff Meyer
THE MEYER LAW FIRM, P.C.
6363 Woodway Drive, Suite 720
Houston, Texas 77057
Phone: (713) 974-4100
Fax: (713) 974-0225

Kenneth T. Fibich
Erin Copeland
FIBICH HAMPTON LEEBRON BRIGGS &
JOSEPHSON, LLP
1150 Bissonnet
Houston, Texas 77005
Phone: (713) 751-0025
Fax: (713) 751-0030

Robert L. Salim
SALIM-BEASLEY, LLC
1901 Texas Street
Natchitoches, Louisiana 71457
Phone: (318) 352-5999
Fax: (318) 352-5998

Kathryn Harrington
Mark Ekonen
Amanda S. Williamson
HENINGER GARRISON DAVIS, LLC
2224 1st Avenue North
P. O. Box 11310
Birmingham, Alabama 35202
Phone: (205) 326-3336
Fax: (205) 326-3332

George Erick Rosemond
ROSEMOND LAW GROUP, PC
8441 Gulf Freeway
Suite 600
Houston, TX 77017

Phone: (713) 230-2342
Fax: (713) 649-3470


/s/ Janet G. Abaray (with consent)
_____
Janet G. Abaray
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**
312 Walnut Street, Suite 2090
Cincinnati, OH 45202
Phone: (513) 852-5600
Fax: (513) 852-5611
E-mail: jabaray@burgsimpson.com

**ATTORNEYS FOR PLAINTIFFS**


AND


BRYAN CAVE LLP

By: /s/ Dan H. Ball (with consent)
Dan H. Ball
dhball@bryancave.com
Peter W. Herzog III
pwherzog@bryancave.com
Stefan A. Mallen
samallen@bryancave.com
211 North Broadway, Suite 3600
St. Louis, MO  63102
(314) 259-2000 (telephone)
(314) 259-2020 (facsimile)

Paul F. Strain
Stephen E. Marshall
Dino Sangiamo
VENABLE LLP
750 East Pratt Street, Suite 900
Baltimore, MD  21202
(410) 244-7400

**ATTORNEYS FOR ABBOTT**
**LABORATORIES, INC.**