**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| C.P., a minor, and E.P., a minor, by Roger Pyszkowski and Mindy Pyszkowski, individually as parents and next friends of C.P. and E.P.; | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 14-cv-847-NJR-SCW |
| v. | ) ) | |
| ABBOTT LABORATORIES, INC., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

Come now PLAINTIFFS, individuals, by and through their undersigned attorneys, for their Complaint against Defendant Abbott Laboratories, Inc. ("Abbott" or "Defendant") relative to its sale and distribution and manufacturing of Depakote and Depakote ER products ("Depakote") in the United States, and in support thereof would show the following:

**PARTIES AND JURISDICTION**

**Plaintiffs**

1.      Plaintiffs Roger Pyszkowski, Mindy Pyszkowski, and C.P. are citizens and residents of Bethalto, Illinois.  Plaintiff C.P. was born in 2003.  Plaintiffs Roger and Mindy Pyszkowski bring this suit in their individual capacity and as parents and next friends of C.P. Child C.P.'s injuries were caused by the mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiffs Roger and Mindy Pyszkowski aver that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

2.      Plaintiffs Roger Pyszkowski, Mindy Pyszkowski, and E.P. are citizens and residents of Bethalto, Illinois.  Plaintiff E.P. was born in 2006.  Plaintiffs Roger and Mindy Pyszkowski bring this suit in their individual capacity and as parents and next friends of E.P. Child E.P.'s injuries were caused by the mother's ingestion of Depakote during pregnancy, and specifically, during her first trimester of pregnancy.  Plaintiffs Roger and Mindy Pyszkowski aver that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health and unborn, and lacked proper warnings as to the true danger associated with its use, and Plaintiffs suffered injury as a result of the mother's ingestion of Depakote.

3.      The foregoing Plaintiffs allege an amount in controversy in excess of $75,000.00, exclusive of interest and costs.

4.      Hereinafter, the injured Plaintiffs listed above will be referred to as "Plaintiffs," or "Injured Children."

**<u>Defendant</u>**

5.      Defendant Abbott Laboratories, Inc. now is, and at all times relevant to this action was, a corporation organized and existing under the laws of the State of Illinois, with its principal place of business and its headquarters in the State of Illinois.  Defendant Abbott Laboratories Inc. will be served through its counsel who have appeared in this case.

6.      Abbott engaged in the business of designing, licensing, manufacturing, testing, advertising, warranting, distributing, supplying, selling, and introducing into the stream of commerce certain products known as Depakote and Depakote ER.  Abbott sold and marketed its Depakote and Depakote ER products in this District and throughout the United States.

## JURISDICTION AND VENUE

7.      This court has subject matter over this matter pursuant to 28 U.S.C. § 1332. Defendant is a resident of the state of Illinois, there is complete diversity of citizenship between all Plaintiffs and the Defendant, and the amount in controversy exceeds $75,000.00.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and 1391(d) due to Defendant's substantial contacts to this district, including direct to consumer marketing, communication with and marketing to physicians, and the sale of Depakote and other pharmaceutical products in this district.

9.      This lawsuit seeks compensation, damages and other relief for injuries Plaintiffs have suffered as a result of Abbott's anti-convulsant drug commonly known as "Depakote." Plaintiffs herein are properly joined pursuant to Fed. R. Civ. P. 20(a)(1).  As detailed in this complaint, Plaintiffs' claims and rights of relief arise out of the same series of transactions and occurrences, including but not limited to, the Defendant's creating, developing, researching, studying, testing, licensing, manufacturing, promoting, advertising, warranting, marketing, selling and distributing the drug Depakote.  Furthermore, as alleged in this complaint, the Plaintiffs' claims and right to relief, if brought separately, present common questions of law or fact, including what information Abbott possessed concerning the harmful effects of Depakote, what information it elected to disclose to physicians and patients about these harmful effects, and what information they were required by law to disclose about those effects.

## UNDERLYING COMMON FACTS

10.     Abbott is and at all relevant times has been engaged in the business of formulating, designing, manufacturing, licensing, testing, advertising, marketing, warranting, selling, distributing, and introducing into the stream of commerce a drug compound known as

"divalproex sodium," "valproic acid," or "valproate," which Abbott has sometimes marketed under brand names such as "Depakote," "Depakote ER," "Depakene," and "Depacon." Regardless of the name under which Abbott marketed, sold, and distributed the drug, all of its forms were and are, for all purposes relevant to Plaintiffs' claims, chemically and pharmacologically identical. For purposes of this Complaint, these various forms and names of the drug compound will all be referred to by the common brand name, "Depakote."

11.     In approximately 1978, after Abbott received approval to market Depakote in the United States for treatment of certain forms of epilepsy, Abbott began marketing and placing Depakote into the stream of commerce throughout the United States. Depakote was promoted as an effective anti-epileptic drug ("AEDs").

12.     Depakote as formulated, designed, manufactured, licensed, tested, advertised, marketed, warranted, sold, distributed, and introduced into the stream of commerce by Abbott was and is defective and unreasonably dangerous for its intended use. In particular, the primary compound in Depakote – valproic acid – has been established to cause severe birth defects if taken during the first trimester of pregnancy.

13.     Among the "major congenital anomalies" (*i.e.*, birth defects) known to result directly from first-trimester exposure to Depakote are, either singly or in some combination with each other, spina bifida, cleft palate, cleft lip, limb and digital deformities, facial dysmorphism, mental developmental delays, genitourinary malformations, and heart defects.

14.     Medical researchers have confirmed that while Depakote may be effective at controlling some forms of seizures, it is also riskier than other AEDs for women who are pregnant or who may become pregnant.

15.     Abbott has been aware of the birth defects associated with Depakote on early-term pregnancies on or before the date it began marketing and distributing Depakote in the United States.

16.     Scientific articles single out Depakote as among the most – if not the most – teratogenic of all AEDs.  One study in 1995 reported an incidence rate of neural tube defects (such as spina bifida) *ten times greater* than with other AEDs.  Another study found major congenital abnormalities in eleven percent of all infants exposed to Depakote during the earliest weeks of pregnancy.

17.     As pharmaceutical research and development progressed through the 1980's and 1990's, new and better AEDs were developed and approved, which proved as effective as Depakote at controlling most seizures in most epileptic patients, but which bore far less risk of causing birth defects.

18.     Despite this emerging scientific consensus, Abbott refused to communicate the true nature and extent of the risk in its product labeling and warnings to physicians and consumers.

19.     Instead of working to warn doctors and women of childbearing age about the sharply heightened risks of ingesting Depakote during the early weeks of pregnancy, Abbott has sought to minimize the risk and downplay the dangers in its product labeling of Depakote.

20.     Despite the risks of major congenital malformations, Abbott has aggressively pursued expansion of the uses for which Depakote is approved and marketed to doctors and patients.  As early as the mid-1990's, Abbott implicitly and explicitly promoted Depakote to doctors, consumers and the general public for unapproved or "off-label" uses, such as for

treatment of mild depression, the depressive state of bi-polar disorder, and chronic pain conditions such as migraine headaches.

21.     Abbott has promoted these off-label uses even though there are other common drugs which are as effective or more effective for treatment of those conditions, and which do not involve the severe risk of congenital malformations associated with Depakote.  In further pursuit of market share in the pharmaceutical industry, Abbott has worked aggressively to manipulate the regulatory system and gain approval for certain of these off-label uses, in hopes of concealing within government approval the dangers of using Depakote for conditions in which its use is unnecessary.

22.     Abbott has concealed risks from and otherwise misled doctors who prescribe Depakote and monitor patients' drug regimen during pregnancy.  Despite knowing the extremely high incidence rate of major congenital malformations in babies born to women who take Depakote while pregnant (one study suggested a risk of up to *one in every five pregnancies*, while others have found the risk is at least one in ten), Abbott continues to downplay the risks and refuses to provide adequate information in the Depakote label and package inserts regarding the true scope and severity of the dangers.  Instead, Abbott insists on using muted and understated language to suggest that women of childbearing age weigh the "potential risks," when in fact the risks are severe, well-known to Abbott, and in scientific reality in excess of the injuries and incident rates reported in the label.

23.     The most tragic aspect of the inadequate label is that Depakote causes irreversible and devastating injuries to the developing child *before the mother or the physician even have a chance to discover the pregnancy*.  Abbott knew or should have known it had a duty to warn doctors and patients that women who were taking Depakote should not get pregnant, and that

women who might become pregnant should not take Depakote.   This simple warning, commonplace with countless pharmaceuticals, would have spared each Plaintiff a lifetime of pain and suffering, inordinate healthcare costs, severe emotional and physical distress, and loss of earning potential.

24.     Depakote was and is a defective product, unreasonably dangerous in light of its nature and intended use.  That defect existed when the product left Abbott's control and has been the proximate cause of injuries to Plaintiffs, whose injuries were caused by the use of Depakote in its intended or foreseeable manner or in the manner recommended by Abbott.

25.     Abbott knew or should have known of the dangerous condition of its product, Depakote, but failed to adequately warn or instruct physicians and consumers of the risks, dangers, and proper uses of the drug.

26.     Abbott has breached its duty of reasonable care and its express and implied warranties, and has made affirmative misrepresentations as well as misrepresentations by omission, all in connection with the design, testing, manufacture, marketing, and/or labeling of Depakote.

27.      As a direct and proximate result of the acts and omissions of Defendant, the Injured Children were born with craniofacial defects, developmental delay,  and other congenital malformations and birth defects.  The Injured Children continue to suffer permanent injury, pain, loss of normal life, and other non-economic damages

28.     As a direct and proximate result of the aforesaid acts of and/or omissions by the Defendant, the Injured Children have:

      (a)     suffered severe and permanent injuries, which they will be
               forced to endure for the remainder of their lives;

      (b)     suffered past and future physical impairment and disfigurement;

(c)     suffered past and future physical pain and suffering;

(d)     suffered past and future mental pain and suffering;

(e)     suffered past and future loss of enjoyment of life;

(f)     incurred substantial costs for medical care in the past, and will in reasonable medical probability incur substantial costs for medical care in the future;

(g)     suffered a loss of earnings and of future earning capacity; and,

(h)     incurred attorney's fees and expenses of litigation related to this action.

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

29.     Defendant failed to disclose a known defect and affirmatively misrepresented that Depakote was safe for its intended use.  Further, Defendant actively concealed the true risks associated with the use of Depakote.  Plaintiffs, the parents of the Injured Children, and/or the prescribing physicians had no knowledge that Defendant was engaged in the wrongdoing alleged herein.  Because of Defendant's concealment of and misrepresentations regarding the true risks associated with Depakote, Plaintiffs, the parents of the Injured Children, and/or the prescribing physicians could not have reasonably discovered Defendant's wrongdoing at any time prior to the commencement of this action.

30.     Thus, because Defendant fraudulently concealed the defective nature of Depakote and the risks associated with its use, the running of any statute of limitations has been tolled.  Likewise, Defendant is estopped from relying on any statute of limitations.

## COUNT I

### Strict Products Liability

31.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

32.     It was the duty of Abbott to manufacture, test, market, advertise, label, distribute, and sell Depakote so that it was reasonably safe for its foreseeable use.

33.     At the time Depakote left the control of Abbott and was sold, it contained one or more conditions which rendered it defective and unreasonably dangerous in light of its nature and intended use.

34.     At all times, Depakote was used in the manner intended, recommended, or reasonably foreseeable by Abbott.  There were and are no other reasonable, secondary causes of Plaintiffs' injuries and damages other than the use of Depakote.

35.     The Depakote manufactured and/or supplied by Abbott and to which Plaintiffs were exposed was defective in design, manufacture, and/or formulation in that when it left the hands of Abbott, the foreseeable risks exceeded the benefits associated with the design and/or formulation of this product.

36.     The Depakote marketed, sold, and supplied by Abbott and to which Plaintiffs were exposed was defective in its marketing and labeling in that Abbott knew or should have known of its dangers and risks when taken during the first trimester of pregnancy, but failed to adequately warn or instruct physicians, consumers, and the general public of the nature and extent of those risks.

37.     The Depakote marketed, sold, and supplied by Abbott and to which Plaintiffs were exposed was defective in its marketing and labeling in that Abbott knew of or should have known of its dangers and risks when taken during the first trimester of pregnancy, as well as the means for reducing or eliminating those dangers and risks, but failed to adequately warn or instruct physicians, consumers, and the general public of those means of reducing or eliminating the risks.

38.     The Depakote marketed, sold, and supplied by Abbott was defective in marketing in that Abbott represented to the consuming public that the product was safe and had qualities that it, in fact, did not have.

39.     The Depakote manufactured and/or supplied by Abbott was defective in design and formulation in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

40.     The Depakote manufactured and/or distributed by Abbott was defective in that Abbott failed to adequately test this product before placing it into the stream of commerce.

41.     Abbott's actions and omissions as identified in this Complaint show that Abbott acted maliciously and/or intentionally disregarded Plaintiffs' rights to warrant the imposition of punitive damages.

42.     As a direct and proximate result of the defective condition of Depakote as manufactured by Abbott, Plaintiffs suffered injuries and damages as described, in excess of $75,000.00.

## COUNT II

### Negligence

43.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

44.     Abbott had a duty to exercise reasonable care in the design, manufacture, testing, sale, labeling and/or distribution of Depakote it placed into the stream of commerce, including a duty to assure that the product did not cause unreasonable or unnecessary injury.

45.     Abbott breached its duty of care to the Plaintiffs through its negligent acts and omissions.  Abbott did not exercise reasonable care in the warning, design, manufacture, sale,

testing, labeling and/or distribution into the stream of commerce of the Depakote in that Abbott knew or should have known that Depakote could cause serious birth defects if taken by pregnant women.

46.     Abbott was negligent in the design, manufacture, sale, testing, and/or distribution of Depakote in that it: (a) failed to use due care in designing, formulating, developing, testing, and manufacturing Depakote so as to avoid or warn against the described risks to consumers who used Depakote; (b) placed an unsafe product into the stream of commerce; and (c) failed to discover or warn of the dangers associated with the use of Depakote despite having actual and/or constructive knowledge of such dangers.

47.     Abbott knew or should have known that Plaintiffs could foreseeably suffer injuries as a result of Abbott's failure to exercise ordinary care as described above.

48.     Abbott acted with conscious indifference and wanton disregard to the rights, safety or welfare of Plaintiffs and others.  Their deceptive and inadequate labeling and marketing, misrepresentation of the risks of Depakote to doctors and women of child bearing potential, and refusal to engage in proper safety evaluation and investigation, both before and after Depakote was first sold, were undertaken in the callous pursuit of market advantage and with callous disregard regard for the safety of those exposed to Depakote, whether directly or in utero.  Abbott was aware of the dangers associated with Depakote and failed to act to reduce risk.  Abbott's conduct evidences actions and/or intentional disregard of the rights of Plaintiffs so as to warrant the imposition of punitive damages.

49.     As a direct and proximate result of Abbott's negligence, Plaintiffs suffered injuries and damages as described, in excess of $75,000.00.

## COUNT III

### Breach of Implied Warranty

50.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

51.     Abbott was a merchant seller with respect to Depakote.

52.     In order to induce the purchase and/or use of Depakote, Abbott impliedly warranted to potential users of Depakote that Depakote was safely tested and manufactured and was safe for the uses for which it was designed and/or advertised to be used.

53.     Abbott breached this warranty in that Depakote was not safe for the uses for which it was manufactured and/or advertised.

54.     Plaintiffs were injured as a result of detrimental reliance upon Abbott's implied warranties.

55.     Abbott's actions and omissions as identified in this Complaint demonstrate malicious actions and/or intentional disregard of Plaintiffs' rights so as to warrant the imposition of punitive damages.

56.     As a direct and proximate result of one or more of the foregoing breaches of implied warranty, Plaintiffs suffered injuries and damages as described, in excess of $75,000.00.

## COUNT IV

### Breach of Express Warranty

57.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

58.     Abbott was a merchant and seller with respect to Depakote.

59.     In order to induce the purchase and/or use of Depakote, Abbott expressly warranted to potential users of Depakote that Depakote was safely tested and manufactured and was safe for the uses for which it was designed and/or advertised to be used.  Express warranties were contained in direct to consumer advertising and other promotional and marketing campaigns, Depakote product information sheets given to patients with their prescriptions, the product labeling, and other public communications and representations.

60.     Abbott breached said warranty in that Depakote was not safe to be used for the purposes for which it was manufactured and/or advertised.

61.     Plaintiffs were injured as a result of detrimental reliance upon Abbott's express warranties.

62.     Abbott's actions and omissions as identified in this Complaint demonstrate malicious actions and/or intentional disregard of Plaintiffs' rights so as to warrant the imposition of punitive damages.

63.     As a direct and proximate result of one or more of the foregoing breaches of express warranty, Plaintiffs suffered injuries and damages as described, in excess of $75,000.00.

## COUNT V

### Misrepresentation by Omission

64.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

65.     Abbott misrepresented the soundness and reliability of Depakote to potential users of Depakote through promotional and marketing campaigns.  Abbott misrepresented that Depakote was safe and/or effective when used as instructed, when, in fact, it was dangerous to

human health.  Abbott continued these misrepresentations for an extended period of time, without disclosing material information.

66.     At the time Abbott promoted Depakote as safe and/or effective, Abbott did not have adequate proof upon which to base such representations and, in fact, knew or should have known that the drug was dangerous.

67.     Abbott concealed these design and manufacturing defects by withholding information pertaining to the inherent design, manufacturing, and safety defects and high risks of severe birth defects as described herein, and instead presented Depakote as safe and reliable.

68.     Abbott's intentional misrepresentations and omissions were made willfully, wantonly, or recklessly to induce the purchase of Depakote.

69.     Abbott failed to exercise reasonable care and competence in obtaining and/or communicating information regarding the safe use of Depakote and otherwise failed to exercise reasonable care in transmitting information regarding its product, Depakote.

70.     Abbott made the aforesaid representations in the court of Abbott's business as designers, manufacturers, and distributors of Depakote despite having no reasonable basis for the assertion that these representations were true and/or without having accurate or sufficient information concerning the aforesaid representations.

71.     At the time the aforesaid representations were made, Abbott intended to induce reliance upon such representations.

72.     Said representations were made with the intent to defraud and deceive and with the intent to induce reliance upon the statement sin order to reap the profits from the sale of Depakote.

73.     At the time the representations were made, there was no reason to know of their falsity.  As a result of reasonable reliance upon Abbott's representations that Depakote was safe, Plaintiffs have suffered, and will continue to suffer, injury, harm and economic loss alleged herein.

74.     As a direct and proximate result of one or more of the foregoing misrepresentations, Plaintiffs suffered the injuries and damages described herein.

<u>**COUNT VI**</u>

**Fraud and Misrepresentation**

75.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

76.     Abbott knew or should have known that the information disseminated about the safety of Depakote usage during pregnancy was false and/or misleading.  Abbott had an absolute duty to disclose the true facts regarding the safety of Depakote, which it negligently failed to do.  Furthermore, Abbott had a duty to ensure that it had a reasonable basis for making the representations described above, to exercise reasonable care in making those representations, to accurately make those representations, and to not make misrepresentations concerning Depakote, all of which Abbott failed to do.

77.     Important information regarding the risk of Depakote was in the exclusive control of Abbott and was exclusively known by Abbott.  As part of its business and in the furtherance of Abbott's own interests, Abbott disseminated information regarding Depakote to the public and did so knowing that the safety of Depakote users depended on the accuracy of that information.  Further, Abbott knew and expected that its representations regarding Depakote would cause

others to take action based upon the information and would cause individuals to be put in peril by such actions and that those individuals would suffer physical harm as a result.

78.     Abbott expressly and/or impliedly warranted that Depakote was safe for use.  The representations by Abbott were, in fact, false.  The true facts were that Depakote was not safe for use and was, in fact, dangerous to the health of the Injured Children.

79.     Abbott failed to exercise reasonable care both in ascertaining the accuracy of the information contained in those representations and in communicating the information.  Further, Abbott was aware that without such information it could not accurately make the above described representations.  Abbott knew about Depakote's relative risks and the true extent of its risks to women of childbearing age but chose to include false and misleading representations regarding those risks in its labeling, which were relied on by Plaintiffs and their doctors and proximately caused harm to Plaintiffs.

80.     As a direct and proximate result of one or more of the foregoing misrepresentations or omissions, Plaintiffs suffered the injuries and damages described herein.

81.     Abbott's actions and omissions as identified in this Complaint demonstrate malicious actions and/or intentional disregard of Plaintiffs' rights so as to warrant the imposition of punitive damages.

82.     The injuries described above entitle Plaintiffs to compensatory damages in excess of $75,000.00 and equitable and declaratory relief, along with all appropriate other damages according to proof.

## <u>CAUSE VII</u>

### **Intentional Infliction of Emotional Distress**

83.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

84.     Abbott's intentional, reckless and extreme conduct foreclosed any opportunity to adequately measure the level of risk related to Abbott's Depakote product.  By withholding information of known design and manufacturing defects and concealing those fatal problems, Abbott created a false sense of security regarding the safety of Abbott's Depakote product.

85.     Abbott's conduct of intentional omission, concealment and failure to warn of the design and manufacturing defects caused Plaintiffs to suffer injuries, harm and economic loss as alleged herein, including permanent and substantial injuries, and expenses attributable to Abbott's conduct.

86.     Abbott's actions and omissions as identified in this Complaint demonstrate malicious actions and/or intentional disregard of Plaintiffs' rights so as to warrant the imposition of punitive damages.

87.     The injuries described above entitle Plaintiffs to compensatory damages in excess of $75,000.00 and equitable and declaratory relief, along with all appropriate other damages according to proof.

## CAUSE VIII

### Negligent Infliction of Emotional Distress

88.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

89.     Abbott intentionally and willfully failed to disclose or warn of the inherent risks and defects of Depakote, while knowingly concealing design, manufacturing and safety defects, and misrepresenting the risks of severe side effects, quality, safety and efficacy of the drug.

90.     Abbott's willful conduct inflicted Plaintiffs with severe emotional distress.

91.     Abbott's conduct of willful omission and concealment of design, manufacturing and safety defects in order to induce ingestion of the drug caused Plaintiffs severe emotional distress.

92.     As a direct result of Abbott's careless and negligent conduct, Plaintiffs have suffered and will continue to suffer injury, harm and economic loss as alleged herein, including permanent and substantial injuries, and expenses attributable to their injuries.

93.     Abbott's actions and omissions as identified in this Complaint demonstrate malicious actions and/or intentional disregard of Plaintiffs' rights so as to warrant the imposition of punitive damages.

94.     The injuries described above entitle Plaintiffs to compensatory damages in excess of $75,000.00 and equitable and declaratory relief, along with all other appropriate damages according to proof.

## CAUSE IX

### Willful and Wanton Conduct

95.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

96.     At all material times Abbott knew or should have known of the dangers associated with Depakote.

97.     Despite their knowledge, Abbott continued to aggressively market Depakote to consumers, including Plaintiffs, without disclosing its dangerous side effects when there existed safer alternative products.

98.     Despite Abbott's knowledge of Depakote's defective and unreasonably dangerous nature, Abbott continued to test, design, develop, manufacture, label, package, promote, market, sell and distribute it so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs, in conscious disregard of the foreseeable harm caused by Depakote when taken by pregnant women.

99.     Abbott's conduct was willful and wanton.

100.     Abbott's conduct, including but not limited to, their failure to adequately test their product, to provide adequate warnings, and their continued sale and marketing of their products to women of child bearing age when they knew or should have known of the serious health risk created, evidences a flagrant disregard of human life as to warrant the imposition of punitive damages as the acts or omissions were committed with knowing, conscious and deliberate disregard for the rights and safety of consumers, including Plaintiffs.

## DAMAGES

101.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

102.     The facts set out above demonstrate that, as a direct and proximate result of Abbott's conduct, Plaintiffs have suffered severe economic and non-economic losses and injuries for which they are entitled to recover damages in excess of $75,000.00, including without limitation the following:

  (a)     bodily injury, disfigurement, conscious pain, suffering, mental anguish, mental suffering, embarrassment, shame, loss of enjoyment of life, shortened life expectancy, loss of association, loss of earnings, loss of profits, and loss of salary suffered in the past and future;

  (b)     the reasonable and necessary expenses for the medical treatment rendered to Plaintiffs in the past and that will be medically probable in the future;

(c)     compensation for Plaintiffs permanent mental and physical impairment suffered in the past the future;

(d)     all other actual damages available under applicable law;

(e)     future economic damages during the age of minority and beyond the age of 18, including lost wages of Plaintiffs;

(f)     punitive damages;

(g)     costs of this suit;

(f)      such further relief as this Court deems necessary, just and proper.

## PRAYER

WHEREFORE, Plaintiffs ask that Defendant Abbott Laboratories, Inc. be cited to appear and answer herein. That upon final trial, Plaintiffs have judgment against Defendant Abbott Laboratories, Inc. in excess of this Court's jurisdictional requisite for actual damages, costs of court, punitive damages, and any other relief that will fairly and adequately compensate for the losses herein alleged.

Respectfully submitted,

BY:    *s./Christopher Cueto*
         Christopher Cueto,
         Attorney ID # 6192248
         Law Offices of Christopher Cueto
         7110 West Main Street
         Belleville, IL 62223
         Telephone: (618) 277-1554

         Ralph D. McBride
         Phillip L. Sampson
         Heath A. Novosad
         Blair R. Loocke
         Nancy R. McEvily
         BRACEWELL & GIULIANI LLP
         711 Louisiana Street, Suite 2300
         Houston, Texas 77002

Phone: (713) 223-2300
Fax: (713) 221-1212

Jennifer Salim Richards
BRACEWELL & GIULIANI LLP
1445 Ross Avenue, Suite 3800
Dallas, Texas 75202
Phone: (214) 468-3800
Fax: (214) 468-3888

Jeff Meyer
THE MEYER LAW FIRM, P.C.
6363 Woodway Drive, Suite 720
Houston, Texas 77057
Phone: (713) 974-4100
Fax: (713) 974-0225

Kenneth T. Fibich
Erin Copeland
FIBICH HAMPTON LEEBRON
BRIGGS & JOSEPHSON, LLP
1150 Bissonnet
Houston, Texas 77005
Phone: (713) 751-0025
Fax: (713) 751-0030

Robert L. Salim
SALIM-BEASLEY, LLC
1901 Texas Street
Natchitoches, Louisiana 71457
Phone: (318) 352-5999
Fax: (318) 352-5998

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on the following counsel of record on November 14, 2014:

Stefan A. Mallen
Dan H. Ball
Peter W. Herzog, III
Bryan Cave LLP
211 North Broadway, Suite 3600
St. Louis, Illinois  63102

Paul F. Strain
Stephen E. Marshall
Dino Sangiamo
David S. Gray
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland  21202

*s./Christopher Cueto*
Christopher Cueto