IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| J.F., a minor by BEATRICE SIFUENTES individually as next friend of J.F., <br><br> Plaintiff, <br><br> vs. <br><br> ABBOTT LABORATORIES, INC., <br><br> Defendant. | ) ) ) ) ) ) ) Case No. 14-CV-847-NJR-SCW ) ) ) ) ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court is Defendant's Motion to Substitute Dr. L. James Willmore (Doc. 578).

Dr. Willmore has been Defendant's designated expert neurologist in the *Sifuentes*[1] case since November 2014. On February 16, 2017, the Court selected *Sifuentes* from the pool of previously worked up Depakote cases for the March 27 trial slot. (Doc. 564, at p. 1). Dr. Willmore advised Abbott on February 17, 2017, "that he was suffering from several medical conditions requiring medications, and he was unsure about his ability to testify at trial." (Doc. 578, at p. 2). Counsel met with Dr. Willmore on February 23, 2017, and learned that his condition "necessitate[d] treatment that will preclude his ability to testify at trial." (Doc. 578, at p. 3).

---

[1] Bringing *Sifuentes* to trial as part of the Depakote mass action has required setting and vacating trial dates on several occasions. The claim was originally brought by Michelle Leal, who was later substituted for Beatrice Sifuentes on February 24, 2016. (Doc. 515). References to the "*Leal*" case throughout the record are references to the currently pending *Sifuentes* case. The Court will refer to the case globally as *Sifuentes*, regardless of whether an event occurred before or after the date of substitution.

Dr. Willmore requested that the details of his illness not be included in the Motion to Substitute. (Doc. 578, at p. 2 n1). But at the recent status conference, counsel for Abbott elaborated as follows:

> Dr. Willmore….is in his 70s and he recently has had a series of medical episodes. And his present problem relates to some issues with his immune system and some difficulties with that, and he is on a rather stringent dose of medication now that causes him issues with fatigue and concentration and reduces his capacity for things like this. And depending upon how this goes over the next few weeks, they may have to go to—with later in March. May have to go, as I understand it, to an even more stringent, I guess is the word I would use, type of medication or stronger type of medication.

(Case No. 12-CV-52, Doc. 834, at p. 5).

While the Court accepted counsel's representations concerning the health of Dr. Willmore, maintaining the March 27 trial date remained a top priority. Accordingly, counsel was instructed to provide the direct contact information of Dr. Willmore so the Court could explore directly with the Doctor his ability to testify, and whether any accommodations could be made to facilitate his participation in the March 27 trial. (Case No. 14-CV-847, Doc. 579). As the issue did not concern the merits of the case and to protect the privacy of Dr. Willmore, the Court conducted the inquiry *in camera*.

On March 2, 2017, the Court consulted with Dr. Willmore concerning his health concerns and status as a potential witness in the March trial. Without going into specifics, both Dr. Willmore's condition and the medication he is on to treat the illness impact his cognitive function and ability to testify at trial or at a deposition. Dr. Willmore also expressed that the prognosis for his return to full health is uncertain. The Court is satisfied that given Dr. Willmore's current condition, no accommodation could be made that would allow him to testify at trial or to sit for a video deposition.

The Federal Rules of Civil Procedure do not expressly delineate the process or standard a court should utilize when faced with a motion to substitute an expert. When faced with such a motion, district courts in this Circuit take one of two approaches. Certain courts view the motion as a request to reopen the deadlines imposed in the scheduling order under Federal Rule of Civil Procedure 16(b)(4). *See e.g.*, *Lincoln Nat. Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, No. 1:04-CV-396, 2010 WL 3892860, at *2 (N.D. Ind. Sept. 30, 2010). While other courts utilize Rule 26(a)(2)(D) and 37(c)(1) to analyze whether the replacement expert should be excluded as a discovery violation. *See e.g.*, *Assaf v. Cottrell, Inc.*, No. 10 CV 0085, 2012 WL 245196, at *2 (N.D. Ill. Jan. 26, 2012).

The analysis under Rule 16(b)(4) requires the Court to assess whether the party's request demonstrates good cause. When considering whether good cause exists, "the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011). Rule 37(c)(1) requires the Court to assess whether there is a substantial justification or harm associated with the failure to disclose the expert. FED. R. CIV. P. 37(c)(1); *Tribble v. Evangelides*, 670 F.3d 753, 758 (7th Cir. 2012), as amended (Feb. 2, 2012). In making a Rule 37(c)(1) determination, the Court is to consider: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) bad faith or willfulness in failing to comply with the court's order. *Spray-Rite Service Corp. v. Monsanto Co*, 684 F.2d 1226, 1245 (7th Cir. 1982).

Courts faced with a similar motion to substitute an expert witness have found the two standards "coexistent." *See e.g. Fid. Nat. Fin., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 308 F.R.D. 649, 652 (S.D. Cal. 2015); *but see Carlson v. Fewins*, No. 1:08-CV-991, 2016 WL 7971764, at *1 (W.D. Mich. Oct. 19, 2016) (finding different burdens imposed by the two rules). This Court need not determine whether the distinctions between Rule 16(b)(4) and Rule 37(c)(1) are ones of semantics or substance, because both the good cause and substantial justification standards are met by the facts before the Court.

One of Abbott's key experts became afflicted with an illness that impacts his ability to accurate and effectively testify, and the prognosis for his return to full health is at best uncertain. This involuntary unavailability was not created or influenced by Abbott's actions, and it cannot be cured through other means available to the Court. Also, within days of learning of his change in status, counsel notified the Court. Aside from the untimely and unforeseen death of an expert witness, the circumstances regarding Dr. Willmore present the near veritable definition of a substantial justification or good cause.[2]

The unavailability of Dr. Willmore does not, however, grant Abbott *carte blanche* to generate new theories after several years of litigation. The substitute expert will be

---

[2] Courts routinely find good cause when unexpected circumstances, outside of the moving party's control, prevent a declared expert from testifying. *See, e.g., McCann v. Cullinan*, 2015 WL 4254226, *1 (N.D. Ill. July 14, 2015) (Describing good cause as being present when there are "illness, mishaps, electronic discovery snags, true emergencies and the recalcitrance of non-party individuals and corporations."); *Assaf v. Cottrell, Inc.*, 2012 WL 245196 (N.D. Ill. Jan. 26, 2012) (Granting substitution when Plaintiff's expert witness had previously testified for Defendant and signed a confidentiality agreement with them, creating a conflict of interest.); (*Lincoln Nat. Life Ins. Co. v. Transamerica Financial Life Ins. Co.*, 2010 WL 3892860, *3 (S.D. Ind. Sept. 30, 2010) (Allowing the defense to substitute an expert after discovering that he would be "incarcerated in federal prison and, needless to say, unavailable to testify at the trial.").

required to have a similar area of expertise, and will be required to provide a report and testimony that adheres to the subjects and theories covered by Dr. Willmore. With the limitations discussed above, Defendant's Motion to Substitute Dr. Willmore (Doc. 578) is **GRANTED**.

Finally, at the February 27 status conference, counsel indicated that Dr. Willmore was also the expert neurologist in the *Pyszkowski* case. (Case No. 12-CV-52, Doc. 834, at p. 6). As the *Pyszkowski* case is not currently set for trial, the substitution of Dr. Willmore is also ordered for that case as well.

The parties are **DIRECTED** to meet and confer to establish a discovery schedule that concludes the expert discovery related to this Order by **April 14, 2017**. If the parties cannot agree on a schedule, they shall submit the dispute to Magistrate Judge Williams for resolution.

**IT IS SO ORDERED.**

DATED:   March 15, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**