IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| J.F., a minor, by BEATRICE SIFUENTES individually as next friend of J.F., | ) ) ) |
| PLAINTIFFS, | ) Case No. 14-cv-847-NJR-SCW ) ) |
| v. | ) ) |
| ABBOTT LABORATORIES INC., | ) JURY TRIAL DEMANDED ) ON ALL COUNTS ) |
| DEFENDANT. | ) |

**DEFENDANT'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 56 and the Court's March 20, 2017 Order (Doc. 584), Defendant Abbott Laboratories Inc. moves for summary judgment on Plaintiffs' claims, if any, for damages related to J.F.'s alleged autism and/or autism spectrum disorder ("autism").[1]

## INTRODUCTION

Plaintiffs claim that prenatal Depakote exposure caused J.F. (born in 2007) to experience various birth defects. Plaintiffs' sole specific causation expert, Dr. Olaf Bodamer, has never included autism in the "constellation of congenital defects" that he has attributed to J.F.'s alleged "in utero exposure to Depakote." (Ex. 1, Bodamer Suppl. Rpt., at 2.) After the close of discovery in this case, a medical record suggesting that J.F. has been diagnosed with autism was produced. (*See* Ex. 2, 5/3/16 Rush Med. Ctr. Rpt. at 8.)

---

[1] On February 20, 2017, Abbott filed its Motion for Partial Summary Judgment and Memorandum in Support (Doc. 572). Abbott respectfully submits this amended version, which should supersede its February 20 filing (Doc. 572).

Plaintiffs have never asserted a claim that J.F.'s alleged Depakote exposure resulted in autism-related damages, and no reference to such a claim should be permitted now. Indeed, Plaintiffs have never disclosed an expert who will opine that J.F. has autism. Without the support of a specific causation expert, Plaintiffs cannot, as a matter of law, recover damages arising from or related to J.F.'s alleged autism. Accordingly, this Court should grant summary judgment and enter a defense judgment on Plaintiffs' claims, if any, for autism-related damages.

## STATEMENT OF MATERIAL FACTS

On August 15, 2011, this case was filed in the Circuit Court of Cook County, and on January 18, 2012, it was removed as part of the Depakote Mass Action. During the more than five years that have elapsed since that removal, Plaintiffs have never disclosed to Abbott any claim that J.F. has autism and that Depakote allegedly caused J.F.'s autism. (*See, e.g.*, Fourth Am. Pl. Fact Sheet 8 (most recent PFS identifying J.F.'s birth defects allegedly resulting from prenatal Depakote exposure, without identifying "Autism (or autism spectrum disorder)" as a condition that J.F. has or that Plaintiffs attribute to Depakote.))

None of Plaintiffs' proffered experts has disclosed an opinion that Depakote caused J.F. to have autism. For example, the original report (Ex. 3) of Plaintiffs' only specific causation expert, Dr. Bodamer, does not disclose any intent to opine that J.F. has autism, because of prenatal Depakote exposure or any other reason. (*See, e.g.*, Ex. 3, Bodamer Rpt. at 10 (noting only that J.F. has a cousin with autism); *id.* ("Other than a maternal first cousin with autism, [J.F.'s] family history was otherwise negative for birth defects, known genetic diseases, intellectual or learning disability.")) In his supplemental report, Dr. Bodamer reiterated his intention to "testify on issues of causation related to the connection between [J.F.'s] spina bifida, club foot, craniofacial dysmorphic features, tibial torsion, hypospadias, learning disabilities,

hydrocephalus, Arnold Chiari II malformation, neurogenic bladder and bowel, scoliosis, global psychomotor developmental delay and ADHD and exposure to Depakote during Ms. Leal's pregnancy with [J.F.]," again making no reference to autism. (Ex. 1, Bodamer Suppl. Rpt. at 2.) During his deposition for this case, Dr. Bodamer testified that he was unaware of anyone even diagnosing J.F. with any autism spectrum disorder—conditions that, in any event, he could not diagnose. (Ex. 4, 8/12/15 Bodamer Dep. at 108:2-16.)

A May 2016 medical record suggests, however, that J.F. was diagnosed with "Autism Spectrum Disorder without Intellectual Disability or Language Impairment, social-communication severity level 1 (requiring support, e g mild impairment) and restricted and repetitive behavior level 1 (requiring support e g, mild impairment)." (Ex. 2, 5/3/16 Rush Med. Ctr. Rpt. at 8.) Plaintiffs have not supplemented Dr. Bodamer's report to disclose that he will be offering any opinions regarding this diagnosis.

## ARGUMENT

Having identified no expert who has opined that Depakote was a cause-in-fact of J.F.'s autism, Plaintiffs cannot recover autism-related damages as a matter of law. "[A] proximate cause is one that produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause." *Kleen v. Homak Mfg. Co.*, 749 N.E.2d 26, 29 (Ill. App. Ct. 2001).

> [P]roximate causation encompasses both causation-in-fact and legal causation. Causation-in-fact exists where there is a reasonable certainty that a defendant's acts caused the injury or damage, meaning that the injury would not have occurred absent the conduct. In contrast, legal causation is a question of foreseeability that asks whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct.

*Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 640 n.1 (7th Cir. 2008) (citations and internal quotation marks omitted). "Under Illinois law, to serve as the sole basis for a conclusion that an

3

act was the proximate cause of the plaintiff's injury, an expert must be able to testify with a reasonable degree of medical certainty that proximate cause existed." *Lewis v. PDV Am., Inc.*, 532 F. Supp. 2d 1006, 1010 (N.D. Ill. 2008) (quoting *Wintz v. Northrop Corp.*, 110 F.3d 508, 515 (7th Cir. 1997)), *aff'd sub nom. Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698 (7th Cir. 2009).

Although jurors should consider J.F.'s alleged autism as an alternative cause of the millions of dollars of damages that Plaintiffs seek in this case, Plaintiffs' failure to produce expert evidence supporting any claim that Depakote purportedly caused J.F. to have autism prohibits any autism-related damages from being awarded. Plaintiffs only named one expert, Dr. Bodamer, to try to identify which of J.F.'s birth defects allegedly resulted from Depakote. Nowhere in Dr. Bodamer's report, supplemental report, or deposition testimony did he claim that prenatal Depakote exposure resulted in J.F. having autism. (*See, e.g.,* Ex. 3, Bodamer Rpt. (no statement that J.F. has autism, much less that it resulted from prenatal Depakote exposure); Ex. 1, Bodamer Suppl. Rpt. (same); Ex. 4, 8/12/15 Bodamer Dep. at 108:2-3 (as of Dr. Bodamer's deposition, no one had even diagnosed J.F. with autism.)) Dr. Bodamer instead proffered opinions about the role, if any, of Depakote in J.F.'s "spina bifida, club foot, craniofacial dysmorphic features, tibial torsion, hypospadias, learning disabilities, hydrocephalus, Arnold Chiari II malformation, neurogenic bladder and bowel, scoliosis, global psychomotor developmental delay and ADHD" – a collection of conditions that does not include autism. (Ex. 1, Bodamer Suppl. Rpt. at 2; *see also* Ex. 4, 8/12/15 Bodamer Dep. at 118:24-119:3 (Q: "It's my understanding that [J.F.] has a first cousin who has been diagnosed with autism; is that your understanding?"/A: "That's correct, but that's not ADHD."))

As Plaintiffs' autism-related claims, if any, lack the specific causation evidence required to survive summary judgment, the Court should enter judgment for Abbott. *See, e.g.*, *Fuesting v. Zimmer, Inc.*, 362 F. App'x 560, 562 (7th Cir. 2010) ("[w]ithout expert causation testimony," plaintiff's products liability claims "fail"); *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 905 (7th Cir. 2007) (upholding summary judgment "[i]n the absence of any other expert evidence supporting [plaintiff's] causation theory"); *Lewis*, 532 F. Supp. 2d at 1009 (where plaintiffs had not met their "burden to establish the proposed testimony is reliable and would assist the trier of fact in understanding the evidence or determining a fact in issue in the case," court would "not consider this testimony in deciding the motion for summary judgment"); *Schmaltz v. Norfolk & W. Ry. Co.*, 896 F. Supp. 180, 183 (N.D. Ill. 1995) (inability of plaintiff "to introduce admissible expert testimony that there is a causal relationship between the alleged herbicide exposure and his medical condition" warranted summary judgment).

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment on Plaintiffs' claims for autism-related damages and enter a defense judgment for Abbott on any such claims.

Date: March 31, 2017

Respectfully submitted,

BRYAN CAVE LLP

By: */s/ Dan H. Ball*
    Dan H. Ball
    dhball@bryancave.com
    Stefan A. Mallen
    samallen@bryancave.com
    211 North Broadway, Suite 3600
    St. Louis, MO 63102
    (314) 259-2000 (telephone)
    (314) 259-2020 (facsimile)

          Paul F. Strain
          Stephen E. Marshall
          Michael B. MacWilliams
          Jason C. Rose
          VENABLE LLP
          750 East Pratt Street, Suite 900
          Baltimore, MD 21202
          (410) 244-7400 (telephone)
          (410) 244-7742 (facsimile)

*Attorneys for Abbott Laboratories Inc.*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on March 31, 2017, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system on all counsel of record.

          */s/ Dan H. Ball*