IN IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| J.F., a minor, by BEATRICE SIFUENTES, next friend of J.F., ) ) ) | |
| Plaintiff, ) ) | Case No. 14-cv-847-NJR-SCW |
| v. ) ) | JURY TRIAL DEMANDED ON ALL COUNTS |
| ABBOTT LABORATORIES INC., ) ) | |
| Defendant. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION *IN LIMINE* (NO. 9) TO EXCLUDE REFERENCES TO INJURIES OR
CONDITIONS SUFFERED BY ANY OTHER PERSON WHOSE
<u>MOTHER TOOK DEPAKOTE, INCLUDING ADVERSE EVENT REPORTS</u>**

The Court has denied this same *limine* point in the past, and the Court should again deny the *limine* point for the same reasons and because it is impermissibly broad and context dependent. Adverse Event Reports ("AERs") are routinely admissible to prove notice to pharmaceutical companies that there is a particular risk attendant to a drug's use. Here, AERs are relevant and highly probative about when Abbott knew or should have known that Depakote's birth defect risk was much greater than Abbott had represented to the medical community, especially as compared to other antiepileptic drugs ("AEDs"). This Court agrees: "pre-[birth year] AERs that relate to birth defects to be admissible to show that Abbott had notice of teratogenic risks of Depakote between the time it was introduced to the market and [minor plaintiff's] conception." *In re Depakote: D.W.K.*, 2015 WL 4775937, at *3 (S.D. Ill. Feb. 20, 2015). AERs are routinely relied upon by drug safety experts, such as Plaintiff's expert Cheryl Blume, Ph.D. The Court should deny the Motion concerning AERs.

To the extent the Motion seeks to exclude any evidence other than AERs, it should be denied as vague. Abbott's request, as written, asks the Court to exclude evidence and argument

1

about "any injury or condition suffered by any other person whose mother took Depakote." Motion at 1. Taken literally, this request encompasses every piece of published literature regarding the safety of Depakote, including published case reports, internal Abbott case reports, epidemiological studies, pregnancy registries, and even Depakote's label. While it is unlikely this was Abbott's intent—and despite the fact that plaintiffs in these Depakote cases have had to point out this deficiency repeatedly since 2014 without any clarification from Abbott in subsequent versions of this Motion—the Motion offers no clarity on what evidence Abbott seeks to exclude. Thus the Motion also fails as to any evidence other than AERs.

## I. ARGUMENT[1]

**A.  AERs Are Admissible To Prove Notice.**

AERs are voluntary reports submitted by healthcare providers or patients to drug makers and FDA when an individual suffers an "adverse drug experience." 21 C.F.R. § 314.80. Federal regulations define an "adverse drug experience" as "[a]ny adverse event associated with the use of a drug in humans, whether or not considered drug related." *Id.* at § 314.80(a). FDA compiles all AERs and makes the data publicly available. *Id.* at § 314. 80(c). As discussed below, manufacturers are required to maintain, analyze, and report the AERs in their possession.

AER databases play an important role in the early detection of drug hazards and are used by pharmaceutical companies, health authorities, and health care academics for this purpose. One of the more prominent AER databases is FDA Adverse Event Report System ("FAERS," formerly called "AERS"). FDA has stated the importance of AERs in drug safety:

> FAERS is a useful tool for FDA for activities such as looking for new safety concerns that might be related to a marketed product, evaluating a manufacturer's compliance to reporting regulations and responding to outside requests for

---

[1] The legal standard for motions *in limine* is discussed in Plaintiff's Response in Opposition to Defendant Abbott Laboratories Inc.'s Motion *In Limine* (No. 1) To Exclude References to Post-Conception Labeling. For the sake of brevity, Plaintiff incorporates that discussion by reference into this response.

> information . . . . If a potential safety concern is identified in FAERS, further evaluation is performed. Further evaluation might include conducting studies using other large databases, such as those available in the Sentinel System. Based on an evaluation of the potential safety concern, FDA may take regulatory action(s) to improve product safety and protect the public health, such as updating a product's labeling information, restricting the use of the drug, communicating new safety information to the public, or, in rare cases, removing a product from the market.

*See* Questions and Answers on FDA's Adverse Event Reporting System (FAERS), https://www.fda.gov/drugs/guidancecomplianceregulatoryinformation/surveillance/adversedrugeffects/ (last visited Aug. 18, 2017).

The FDA requires the submission of AERs and pharmaceutical companies—like Abbott—monitor AERs, "for a reason." *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & PMF Prods. Liab. Litig.*, No. 3:09-md-2100-DRH, 2011 WL 6740391, at *5 (S.D. Ill. Dec. 22, 2011). This *Yaz* court is not alone in finding AERs relevant and admissible in pharmaceutical litigation. *See e.g.*, *Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 WL 4460011, at *15–16 (N.D. Ill. Mar. 29, 2013) (AERs admitted to show defendant's knowledge and notice); *Acree v. Watson Pharms., Inc.*, No. 10 C 7812, 2012 WL 5893486, at *8 (N.D. Ill. Nov. 23, 2012) (AERs admitted for purposes of notice and probity outweighs prejudice); *Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1385–86 (4th Cir. 1995) (upholding trial court's admission of Drug Experience Reports because such reports went to the issue of notice); *Worsham v. A.H. Robins Co.*, 734 F.2d 676, 686–87 (11th Cir. 1984) (upholding the trial court's admission of prior adverse reaction reports because the reports went to the issue of state of mind); *Bartlett v. Mut. Pharm. Co., Inc.*, 760 F. Supp. 2d 220, 234, n.7 (D.N.H. 2011) (noting that AERs may be admitted for the purpose of notice and when admitted for this purpose, would not be hearsay), *aff'd* 678 F.3d 30 (1st Cir. 2012), *rev'd on other grounds* 133 S. Ct. 2466 (2013); *In re Fosamax Prods. Liab. Litig.*, No. 1:06-MD-1789-JFK, 2010 WL 4242708, at *3 (S.D.N.Y. Oct. 27, 2010) (noting that AERs are

3

admissible to prove notice).

Further, courts have held that AERs used to show notice are not hearsay. *Bartlett*, 760 F. Supp. 2d at 234, n.7 (noting that AERs may be admitted for the purpose of notice and when admitted for this purpose, would not be hearsay); *Golod v. Hoffman La Roche*, 964 F. Supp. 841, 855 (S.D.N.Y. 1997) (finding that adverse event "reports are not hearsay, because they are offered not as proof of the fact that [the drug] caused the reported blindness, but as evidence that [the defendant] was on notice of a potentially serious optical side effects, and thus 'should have known' and warned of such risk").

A drug manufacturer's duty to monitor its products for adverse events supports the admissibility of AERs to show notice to the manufacturer of the risks of its drugs. Moreover, in products liability actions, evidence of similar accidents or other adverse events involving the same kind of product is generally admissible on the issues of, among other things, notice of the danger and product defects when the conditions surrounding the other accidents or adverse events are similar to the accident that is the subject of the litigation before the court. *See Burke v. Deere & Co.*, 6 F.3d 497, 506 (8th Cir. 1993) (approving trial court's admission of evidence of similar accidents; noting "[e]vidence of other accidents is admissible if the proponent of the evidence demonstrates that the accidents occurred under circumstances substantially similar to those at issue in the case at bar" to show "the defendant's notice of a defect, the magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, the standard of care, or causation." (citing *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613, 625 (8th Cir.1983))); *see also Gearhardt v. Am. Reinforced Paper Co.*, 244 F.2d 920, 925 (7th Cir. 1957) ("Where the dangerous or safe character of the place, method, or appliance which is alleged to have caused the accident or injury is in issue, evidence is admissible in a proper case that other

similar accidents or injuries, actual or potential, have resulted at or from such place, method, or appliance, whether before the accident in suit, at the same time, or thereafter") (citing 1 WIGMORE ON EVIDENCE § 442 (1904)); *Bellinger v. Deere & Co.*, 881 F. Supp. 813, 818 (N.D.N.Y. 1995) (Hurd, Mag.) (evidence of other accidents admissible because "[t]he evidence proffered relates to other accidents with the same model cornpicker, and injury due to contact with the same part of the cornpicker, as that at issue in this case. The other accidents therefore occurred in sufficiently similar circumstances such that the evidence is relevant here. Any differences in circumstances such as whether the extremity was placed into the husking box accidentally or purposely to clear a jam go to the weight given to the evidence by the fact-finder").

AERs are admissible and detail other adverse events associated with the same prescription drug. At the very least they should be admitted as evidence of notice and the danger posed by Depakote.

**B.     Experts May Rely On AERs.**

Dr. Blume's reliance on AERs in forming her opinions in this lawsuit provides a second, independent ground supporting the admissibility of AERs. Statistical review of information in AER databases is standard in the pharmaceutical industry, and its usefulness is supported by findings in numerous published, peer-reviewed papers. Ex. B to Pl's Resp. to Def's Mot. *in Limine* No. 2, Blume Report at ¶¶ 40–53. Drug safety experts monitor such databases to detect safety signals. *Id.* A safety signal means that an excess number of adverse events have been associated with a particular drug. Once a safety signal is detected, the drug manufacturer should then conduct a thorough investigation and take steps to minimize any risks.

Using generally accepted methods, Dr. Blume analyzed AERs for Depakote as part of her overall analysis of whether and when a signal for serious birth defects attendant to Depakote

exposure should have been detected, and whether and when it was apparent that Depakote's birth defect risks were greater than similar drugs. *Id.* at 118–19, 124–26, 135. In her analysis, Dr. Blume also discovered serious flaws in Abbott's collection and assessment of AERs. *See id.* at 118–19. Because AERs are reasonably relied upon by drug safety experts, Dr. Blume is allowed to use this information in formulating her opinions and conclusions. *United States v. Thornton*, 642 F.3d 599, 607 (7th Cir. 2011) ("Moreover, '[w]hen an expert testifies, "the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted"' if those facts or data are the type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." (quoting *United States v. Moon*, 512 F.3d 359, 361 (7th Cir. 2008)); *Payne v. Schneider Nat'l Carriers, Inc.*, 737 F. Supp. 2d 969, 974 (S.D. Ill. 2010) (citing numerous decisions allowing experts to rely upon admissible hearsay evidence, provided that it is the type reasonably relied upon by experts in the particular field in forming opinions on the subject).

The United States District Court for the Western District of Missouri also permitted a drug safety expert to rely on AERs when testifying that the drugs Aredia and Zometa cause osteonecrosis of the jaw (ONJ). *Winter v. Novartis Pharms. Corp.*, No. 06-4049-CV-C-MJW, 2012 WL 827305, at *6 (W.D. Mo. Mar. 8, 2012). The *Winter* court allowed the plaintiff's drug safety expert to rely on AERs despite the manufacturer's argument that they "merely present anecdotes that do not rise to the level of" scientific proof. *Id.* That court also rejected the manufacturer's argument, allowing the drug safety expert to rely on the AERs and leaving the question of whether that reliance was appropriate for cross examination. *Id.*

The same result should follow here. Based in part on her analysis of the AERs, Dr. Blume opines that Abbott knew or should have known by the early 1990s, at the latest, that Depakote was more teratogenic than its label indicated. Ex. B to Pl's Resp. to Def's Mot. *in Limine* No. 2, Blume

6

Report at ¶ 155. Dr. Blume should be allowed to present this testimony to the jury.

**C.     Evidence Of AERs Should Not Be Excluded For Unfair Prejudice.**

Exclusion of evidence for unfair prejudice under Rule 403 of the Federal Rules of Evidence is an extraordinary remedy that should be used sparingly. *Westcott v. Crinklaw*, 68 F.3d 1073, 1077–78 (8th Cir. 1995). Excluding evidence under Rule 403 at the pretrial stage is an "extreme measure." *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 369 F.3d 293, 314 (3d Cir. 2004) (citing *Hines v. Consol. R. Corp.*, 926 F.2d 262, 274 (3d Cir. 1991)). The determination about whether otherwise relevant evidence should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice is best made at the time of trial, when the court has all relevant considerations before it, rather than in the context of a pretrial motion *in limine*. *Garvey v. Dickinson Coll.*, 763 F. Supp. 799, 802 (M.D. Pa. 1991) (citing *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990)). As the Third Circuit has held:

> [A] court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence. We believe that Rule 403 is a trial-oriented rule. Precipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper.

*In re Paoli R.R. Yard PCB Litig.* 916 F.2d at 859 (footnote omitted). Admission of AERs will not cause confusion of the issues. On the contrary, the jury in this case will be asked to decide whether Abbott knew that Depakote was more teratogenic than its label represented, whether it was more teratogenic than other AEDs, and whether Abbott should have warned women who were pregnant or who may become pregnant to use Depakote only as a last resort, as well as whether Abbott failed to discharge its duty to monitor the teratogenic effects of Depakote. AERs are an important piece of evidence to assist in answering those questions.

**D.     The Remainder Of Abbott's Motion Is Fatally Vague.**

To the extent the Motion seeks to exclude any evidence other than AERs, it fails for lack of specificity.  Numerous courts have concluded that a motion *in limine* that is not directed at specific testimony or evidence should be denied.  *See, e.g.*, *Abbott Labs. v. Sandoz, Inc.*, 743 F. Supp. 2d 762, 782 (N.D. Ill. 2010) (denying broad motion *in limine* that did not seek to exclude any specific testimony or evidence); *United States v. Messino*, 873 F. Supp. 1177, 1188 (N.D. Ill. 1995) ("defendant's motion is too vague to warrant a ruling that all incidents fitting into defendant's description should be excluded"); *Maharaj v. Cal. Bank & Trust*, 288 F.R.D. 458, 462 (E.D. Cal. 2013) (denying motion *in limine* "[s]ince it is unclear what evidence is involved"); *Lego v. Stratos Int'l, Inc.*, No. C 02-03743 JW, 2004 WL 5518162, at *1 (N.D. Cal. Nov. 4, 2004) (denying motion *in limine* "because the requested relief is too vague"); *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 407–08 (S.D.N.Y. 2003) (denying motion to exclude evidence for "lack[ing] sufficient specificity[,]" stating "[n]o particular documents or testimony have been identified in the motion").

The same holding should follow here.  There is no possible means whereby Plaintiff can meaningfully respond, or this Court can fairly evaluate, such an overbroad and non-specific motion *in limine*.

## II. CONCLUSION

For at least the foregoing, Plaintiff respectfully requests that the Court deny Abbott's Motion *in Limine* (No. 9) to Exclude References to Injuries or Conditions Suffered by any Other Person Whose Mother Took Depakote, Including Adverse Event Reports.

Respectfully submitted,

By:     */s/ Christopher Cueto*

                                                                                                                                                             _____

Christopher Cueto
Bar No.: 06192248
Michael Gras
Bar No.: 06303414

LAW OFFICE OF CHRISTOPHER CUETO, LTD.
7110 West Main Street
Belleville, Illinois 62223
Telephone: (618) 277-1554
Facsimile: (618) 277-0962

Ralph D. McBride
Phillip L. Sampson, Jr.
Heath A. Novosad
Blair R. Loocke
Nancy McEvily Davis
Carlton D. Wilde III
BRACEWELL LLP
711 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (713) 221-1212

John E. Williams, Jr.
John T. Boundas
WILLIAMS KHERKHER HART BOUNDAS, LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017-5051
Telephone: (713) 230-2200
Facsimile: (713) 643-6226

Kenneth T. Fibich
Jay Henderson
FIBICH HAMPTON LEEBRON BRIGGS & JOSEPHSON, LLP
1150 Bissonnet
Houston, Texas 77005
Telephone: (713) 751-0025
Facsimile: (713) 751-0030

George Erick Rosemond
ROSEMOND LAW GROUP, PC
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
Telephone: (713) 230-2342
Facsimile: (713) 649-3470

## ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

Pursuant to Rule 7.1 of the Local Rules of the Southern District of Illinois, I certify that a true and correct copy of the foregoing has been properly served upon Abbott Laboratories Inc. as required by the Federal Rules of Civil Procedure.

*/s/ Christopher Cueto*
Christopher Cueto